IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

DOCUMENTED NY,

    Plaintiff,

    v.

U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; and U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

    Defendants.

Civil Action No. 25-4342

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. This action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, seeks to compel Defendants U.S. Department of Homeland Security (DHS), U.S. Customs and Border Protection (CBP), and U.S. Immigration and Customs Enforcement (ICE) to disclose records underlying the DHS Secretary's "Finding of Mass Influx of Aliens" on January 23, 2025, and related agreements between Defendants and state and local governments.

2. On January 23, 2025, the DHS Secretary declared the first ever "mass influx" under 8 U.S.C. § 1103(a)(10)—a never-invoked, thirty-year-old provision of the Immigration and Nationality Act that allows the executive branch to authorize state or local law enforcement officers to exercise federal immigration powers, privileges, or duties if a mass influx is "arriving off the coast of the United States, or near a land border" and "presents urgent circumstances requiring an immediate Federal response." 8 U.S.C. § 1103(a)(10).

3. The DHS Secretary found "that an actual or imminent mass influx of aliens is arriving at the southern border of the United States and presents urgent circumstances requiring an immediate federal response" that "endanger the lives, property, safety, and welfare of the residents of every State in the Union," including the noncontiguous states of Alaska and Hawai'i.

1

Notice of Finding of Mass Influx of Aliens, 90 Fed. Reg. 8399, 8400-01 (Jan. 29, 2025) (hereinafter "Finding").

4. The DHS Secretary "request[ed] the assistance of State and local governments in all 50 States." *Id.* at 8403.

5. At least one state government has answered the call: On January 31, 2025, Texas Governor Greg Abbott and Defendant CBP executed a memorandum of understanding authorizing Texas national guardsmen to act as immigration officers and exercise all powers, privileges, or duties conferred or imposed by applicable law or regulation on such officers (hereinafter "Texas National Guard MOU").

6. The claimed mass influx is inconsistent with government statistics about southern border crossings, though: Defendant CBP encountered only 61,448 noncitizens at the southern border in January 2025—115,000 fewer people than the previous year.

7. Responding to the widespread and exceptional media interest in the Finding and the Texas National Guard MOU, and seeking to inform the public about these issues, Plaintiff filed FOIA requests with Defendants and asked the agencies to process them expeditiously.

8. Defendants have not done so, so Plaintiff now brings this FOIA action for injunctive and other appropriate relief.

## JURISDICTION AND VENUE

9. This court has jurisdiction under 5 U.S.C. § 552(a)(4)(A)(vii), (a)(4)(B), (a)(6)(E)(iii) and 28 U.S.C § 1331 since this action arises under FOIA against agencies of the United States.

10. Venue lies in this district under 5 U.S.C § 552(a)(4)(B) because Plaintiff resides in, and has its principal place of business in, this district.

## PARTIES

11. Plaintiff Documented NY (Documented) is an award-winning non-profit news site devoted to covering immigrants and the policies that affect their lives. Documented maintains its sole office at 85 Broad St., New York, NY 10004 and its mailing address at a post office box in New York, NY 10272. It provides original reporting on the ground-level impact of shifts in labor policy, law-enforcement practices and bureaucratic requirements, and new federal directives on immigrant communities. Documented has garnered over 65,000 unique readers per month and broken a number of stories in the public interest. Documented also partners with national news outlets including *The New York Times, The Guardian, The Daily Beast*, and others to further promote its coverage of immigration. Documented also publishes a widely read policy-focused newsletter three times a week and a newsletter targeting New York City's Spanish-speaking immigrants that is distributed on WhatsApp.

12. Defendant DHS is a cabinet agency of the U.S. government and an agency within the meaning of 5 U.S.C. § 552(f)(1).

13. Defendant ICE is a subcomponent of Defendant DHS and an agency within the meaning of 5 U.S.C. § 552(f)(1).

14. Defendant CBP is a subcomponent of Defendant DHS and an agency within the meaning of 5 U.S.C. § 552(f)(1).

## STATEMENT OF FACTS

I. **Enactment and Invocation of 8 U.S.C. § 1103(a)(10)**

  A. *8 U.S.C. § 1103(a)(10)'s Lead-Up, Enactment, and Aftermath*

15. Congress enacted 8 U.S.C. § 1103(a)(10) in 1996 in response to multiple large migration events off the coast of Florida in the 1980s and early 1990s.

16. This provision states that "[i]n the event the Attorney General determines that an actual or imminent mass influx of aliens arriving off the coast of the United States, or near a land border, presents urgent circumstances requiring an immediate Federal response, the Attorney General may authorize any State or local law enforcement officer, with the consent of the head of the department, agency, or establishment under whose jurisdiction the individual is serving, to perform or exercise any of the powers, privileges, or duties conferred or imposed by this chapter or regulations issued thereunder upon officers or employees of the Service."[1] 8 U.S.C. § 1103(a)(10).

17. In October 1998, the INS executed a memorandum of understanding with the State of Florida that authorized the State to provide logistical and law enforcement support to the federal response in the event of an actual or imminent mass influx into the State upon request from the INS. Ex. A 17.

18. The INS also developed preliminary contingency agreements with Florida state and local law enforcement agencies that authorized their personnel to exercise federal immigration law enforcement authority during an actual or imminent mass influx. *Id.*; *see also* Powers of the Attorney General to Authorize State or Local Law Enforcement Officers to Exercise Federal Immigration Authority During a Mass Influx of Aliens, 67 Fed. Reg. 48,354, 48,355 (July 24, 2002).

   B. *Defendant DHS's Invocation of 8 U.S.C. § 1103(a)(10)*

19. Until January 23, 2025, no actual or imminent mass influx had ever been declared under 8 U.S.C. § 1103(a)(10).

---

[1] The Service refers to the U.S. Immigration and Naturalization Service ("INS")—an agency within the Department of Justice that handled immigration issues until Congress dissolved it in the Homeland Security Act of 2002 and reallocated its immigration portfolio to Defendant ICE and U.S. Citizenship and Immigration Services.

20. On January 23, 2025, the DHS Secretary declared "an actual or imminent mass influx of aliens is arriving at the southern border of the United States and presents urgent circumstances requiring an immediate federal response" that "endanger the lives, property, safety, and welfare of the residents of every State in the Union," including the noncontiguous states of Alaska and Hawai'i. Finding, 90 Fed. Reg. at 8400-03.

21. Media outlets covering the Finding immediately expressed concerns about its factual basis and legality. *See* Ex. A 5 n.6.

22. These concerns are well-founded: Encounters at the U.S.-Mexico border between Defendant CBP and noncitizens without lawful immigration status were decreasing when Defendant DHS made the Finding: Defendant CBP encountered only 61,448 noncitizens at the southern border in January 2025—35,000 fewer than in December 2024, 69,000 fewer than in June 2024, and 116,000 fewer than in January 2024.

   C. *8 U.S.C. § 1103(a)(10) Agreements & Deputization of State Law Enforcement*

23. The DHS Secretary "request[ed] the assistance of State and local governments in all 50 States" in the Finding. 90 Fed. Reg. at 8403.

24. On January 31, 2023, Texas Governor Greg Abbott and the Acting CBP Commissioner executed the Texas National Guard MOU pursuant to 8 U.S.C. § 1103(a)(10) and DHS Delegation 7010.3.2. Ex. A at 19,23.

25. The MOU authorizes Texas National Guard personnel to perform or exercise any of the powers, privileges, or duties conferred or imposed by applicable law or regulation on immigration officers under Defendant CBP's supervision and direction. *Id.* at 20-21.

26. Defendant CBP has since deputized hundreds of Texas national guardsmen as immigration officers in Laredo, El Paso, and other locations along the Texas-Mexico border.

## II. Plaintiff's FOIA Requests

27. On February 26, 2025, Plaintiff filed FOIA requests with Defendants for four categories of records:

   a. Records record, reviewed, or otherwise considered by the DHS Secretary, his supervisees, and his delegees when making the Finding;

   b. All agreements, memoranda of understanding, and other similar records between Defendants and state and local law enforcement agencies under 8 U.S.C. § 1103(a)(10) (hereinafter "103(a)(10) agreements");

   c. All agreements, memoranda of understanding, and other similar records executed between Defendant ICE and Nassau County from January 20, 2025, to the date of the agency's reasonable search; and

   d. DHS Delegation 7010.3.

*See* Ex. A 2-3.

28. Plaintiff sought expedited processing in each request on two grounds:

   a. The Finding and associated 103(a)(10) agreements were a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence"; and

   b. Plaintiff has a compelling need for responsive records because it is primarily engaged in disseminating information and there is urgency to inform the public about the Finding and associated 103(a)(10) agreements.

*See id.* at 3-10.

29. Plaintiff's requests for expedited processing reference twenty articles in local, social, and nationwide media outlets about the Finding and thirty-five articles in such outlets about the Texas National Guard MOU. Many raise concerns about these actions' legality.

30. Plaintiff also sought a fee waiver in each request on the grounds that disclosure of the requested records is in the public interest. *See id.* at 10-11.

31. Plaintiff's requests for fee waivers detail how disclosure is not primarily in its commercial interest and is likely to contribute significantly to public understanding of Defendants' operations and activities.

  A. *CBP Request*

32. On February 26, 2025, Defendant CBP received Plaintiff's FOIA request and designated it as CBP-FO-2025-073326 (hereinafter "CBP Request").

33. On March 27, 2025, Defendant CBP denied Plaintiff a fee waiver.

34. Around that time, Defendant CBP also denied Plaintiff expedited processing.

35. On April 2, 2025, Plaintiff appealed the fee waiver denial.

36. To date, Defendant CBP has made no determination on the merits of the CBP Request or Plaintiff's fee waiver appeal.

37. Plaintiff has constructively exhausted the administrative process as to the CBP Request.

  B. *ICE Request*

38. On February 26, 2025, Defendant ICE received Plaintiff's FOIA request and designated it as 2025-ICFO-22078 (hereinafter "ICE Request").

7

39. On February 28, 2025, Defendant ICE closed the ICE Request and referred it to Defendant DHS for processing on the misbelief that "the information [Plaintiff is] seeking is under the purview of DHS Privacy at DHS Headquarters."

40. Later that day, Plaintiff asked Defendant ICE to reopen the ICE Request, noting that it seeks agreements to which Defendant ICE is a party, such as the agreement between it and Nassau County.

41. On March 18, 2025, Defendant ICE reopened the ICE Request, placed it on hold, and asked Plaintiff to clarify the scope of the 103(a)(10) agreement part of the Request.

42. Plaintiff did so later that day.

43. On April 17, 2025, Plaintiff asked Defendant ICE why the ICE Request remained on hold and what outstanding information the agency required to process the Request.

44. Defendant ICE has yet to respond to Plaintiff's question.

45. Nor has Defendant ICE made a determination on the merits of the ICE Request or the requests therein for a fee waiver and expedited processing.

46. Plaintiff has constructively exhausted the administrative process as to the ICE Request.

C. *DHS Request*

47. On February 26, 2025, Defendant DHS received Plaintiff's FOIA request and designated it as 2025-HQFO-02651 (hereinafter "DHS Request").

48. On February 28, 2025, Defendant DHS asked Plaintiff to clarify the scope of the 103(a)(10) agreement part of its request.

49. Plaintiff did so later that day.

50. On March 7, 2025, Defendant DHS closed the DHS Request "due to the topic of records [Plaintiff is] seeking" and because Defendants ICE and CBP were processing it.[2]

51. Plaintiff asked Defendant DHS to reconsider the closure later that day, noting that the DHS Request seeks "records read, reviewed, or otherwise considered by the DHS Secretary" when making the Finding.

52. On March 11, 2025, Defendant DHS re-opened the DHS Request and attributed its closure to a "miscommunication."

53. To date, Defendant DHS has not made a determination on the merits of the DHS Request or the requests therein for expedited processing and a fee waiver.

54. Plaintiff has constructively exhausted the administrative process as to the DHS Request.

## CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF: FAILURES TO GRANT EXPEDITED PROCESSING**

55. Plaintiff incorporates by reference ¶¶1-54.

56. Plaintiff has a legal right to receive decisions from Defendants DHS and ICE on its requests for expedited processing within ten days of making these requests. *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I).

57. Plaintiff also has a legal right to expedited processing of the DHS Request, the ICE Request, and the CBP Request under FOIA and DHS implementing regulations. *See* 5 U.S.C. § 552(a)(6)(E)(i), (v)(II); 6 C.F.R. § 5.5(e)(1)(ii), (iv).

58. Defendants DHS and ICE's failures to grant Plaintiff's requests for expedited processing to date violate FOIA and DHS implementing regulations.

---

[2] Defendant ICE had closed Plaintiff's ICE Request by this time. *See supra* ¶¶40-42.

59. Defendant CBP's decision to deny Plaintiff's request for expedited processing violates FOIA and DHS implementing regulations.

**SECOND CLAIM FOR RELIEF: FAILURE TO PROCESS REQUESTS AS SOON AS PRACTICABLE**

60. Plaintiff incorporates by reference ¶¶1-54.

61. Plaintiff has a legal right under FOIA for Defendants to process the DHS Request, the ICE Request, and the CBP Request "as soon as practicable." *See* 5 U.S.C. § 552(a)(6)(E)(iii).

62. Defendants' failures to complete the processing of the DHS Request, the ICE Request, and the CBP Request to date violate FOIA.

**THIRD CLAIM FOR RELIEF: FAILURE TO CONDUCT A REASONABLE SEARCH**

63. Plaintiff incorporates by reference ¶¶1-54.

64. Plaintiff has a legal right under FOIA for Defendants to conduct a reasonable search for records responsive to the DHS Request, the ICE Request, and the CBP Request respectively. *Id.* § 552(a)(3).

65. Defendants have not conducted reasonable searches for records responsive to the DHS Request, ICE Request, and the CBP Request.

66. Defendants' failures to conduct reasonable searches for these records violate FOIA. *Id.*

**FOURTH CLAIM FOR RELIEF: FAILURE TO MAKE RESPONSIVE RECORDS PROMPTLY AVAILABLE IN VIOLATION OF FOIA**

67. Plaintiff incorporates by reference ¶¶1-54.

68. Plaintiff has a legal right under FOIA to obtain the records sought in the DHS Request, ICE Request, and the CBP Request promptly. *Id.* § 552(a)(3)(A).

69. Defendants have not yet made any records responsive to the DHS Request, the ICE Request, and the CBP Request available to Plaintiff.

70. Defendants' failures to make these records available to Plaintiff violate FOIA. *Id.*

### FIFTH CLAIM FOR RELIEF: FAILURE TO AWARD A FEE WAIVER

71. Plaintiff incorporates by reference ¶¶1-54.

72. Plaintiff has a legal right for a fee waiver under FOIA and Defendant DHS's implementing regulations. *See* 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k)(1).

73. Defendants DHS, CBP, and ICE's failures to grant Plaintiff fee waivers on the DHS Request, the CBP Request, and the ICE Request violate FOIA and DHS implementing regulations.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court grant the following relief:

a. Assume jurisdiction over the matter;

b. Expedite consideration of this case pursuant to 28 U.S.C. § 1657(a);

c. Grant Plaintiff expedited processing of the DHS Request, the ICE Request, and the CBP Request;

d. Order Defendants to process the DHS Request, the ICE Request, and the CBP Request as soon as practicable;

e. Order Defendants to conduct reasonable searches for all records responsive to the DHS Request, the ICE Request, and the CBP Request in accordance with 5 U.S.C. § 552(a)(3);

f. Order Defendants to process and disclose responsive non-exempt records in their entirety promptly;

g. Review any and all of Defendants' decisions to redact or withhold information in responsive records as exempt from disclosure;

h. Grant Plaintiff fee waivers on the DHS Request, the CBP Request, and the ICE Request;

    i.   Award Plaintiff costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

    j.   Grant other such relief as the Court may deem just and proper.

Date: May 22, 2025                     Respectfully submitted,

/s/   Chris Opila

Christopher ("Chris") Opila (S.D.N.Y. Bar No. 6046494)
AMERICAN IMMIGRATION COUNCIL
PMB2026
2001 L Street N.W., Suite 500
Washington, DC 20036
(202) 507-7699 | copila@immcouncil.org

Raul A. Pinto (S.D.N.Y. Bar No. 4963443)
AMERICAN IMMIGRATION COUNCIL
PMB2026
2001 L Street N.W., Suite 500
Washington, DC 20036
(202) 507-7549 | rpinto@immcouncil.org